**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHILLIP S. MORALES, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 04-1044 (JR) |
| : | |
| INTELSAT GLOBAL SERVICE CORP., : | |
| *et al.*, : | |
| : | |
| Defendants. : | |
| _____ : | |
| : | |
| PATRICIA ACOSTA, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 04-1618 (JR) |
| : | |
| INTELSAT GLOBAL SERVIC CORP., *et* : | |
| *al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM ORDER**

This case arises out of the July 2001 privatization of the International Telecommunications Satellite Organization (INTELSAT), an international treaty organization based in the District of Columbia. Defendants Intelsat Global Services Corporation (IGSC), a Delaware Corporation, and Intelsat, Ltd., a Bermuda-based holding company for IGSC, are the private successors to INTELSAT.[1] Plaintiffs are INTELSAT retirees, persons eligible to retire as of July 2001, or the current or

---

[1] INTELSAT is not a party to this case.

surviving spouses of such persons.  It appears that, in the run-up to privatization, INTELSAT made commitments (in board resolutions and statements by its CEO) that the medical benefits of retirees would not be reduced after privatization.  Those benefits included full coverage for surviving spouses.  The defendants themselves offered voluntary retirement packages to some of the plaintiffs after the privatization process was complete.  The offers included language explicitly reaffirming INTELSAT's prior commitments.  After privatization, IGSC made only limited medical coverage available to surviving spouses, and the plaintiffs sued, asserting claims for breach of contract, fraud, promissory estoppel, and ERISA liability.  The defendants now move to dismiss, arguing, among other things, that the commitments INTELSAT made are not binding upon them, because INTELSAT was immune from suit when it made them.

     Defendants are not bound by INTELSAT's commitments unless it can be shown that they adopted them or assumed responsibility for carrying them out.  This means that the barriers to recovery for most of these plaintiffs are very high, and quite possibly insurmountable.  Because it is not clear that there is no set of facts on which plaintiffs could prevail, however, dismissal is inappropriate for most of the claims presented.

**Consolidation and class action status**

This was originally two cases: 04-cv-01618 - <u>Acosta et al. v. Intelsat Global Service Corp. et al.</u> and 04-cv-01044 - <u>Morales et al. v. Intelsat Global Service Corp. et al</u>.  The two cases involved substantially the same, if not precisely the same, issues, and I ordered them consolidated them at oral argument on May 11, 2005.  That order was not properly reflected in the docket, however, and I reiterate now that <u>Acosta</u> is **consolidated** with <u>Morales</u>.  <u>See</u> LCvR 40.5(d).  Plaintiffs' motions to consolidate [Acosta: 21, 33] are **granted**.  The Clerk's office **shall close** <u>Acosta</u> and transfer all parties not already in <u>Morales</u> to <u>Morales</u>.  All filings with this Court **shall be filed** in <u>Morales</u>.

The <u>Acosta</u> plaintiffs' motion for leave to file a second amended complaint [26] is **granted**.  The plaintiffs should, however, agree on and file a single consolidated complaint.

In the interest of judicial efficiency, the pending motions for class certification [<u>Acosta</u>: 21; <u>Morales</u>: 6] are most appropriately addressed at a later stage in this litigation, <u>see</u> <u>Curtin v. United Airlines, Inc.</u>, 275 F.3d 88, 92-93 (D.C. Cir. 2001), and are now **denied without prejudice**.

**Immunity**

INTELSAT is a treaty organization protected by the International Organizations Immunities Act.  It has "the same

immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." 22 U.S.C. § 288a(b); <u>see also</u> 22 U.S.C. § 288; 42 Fed. Reg. 4331. INTELSAT's immunity was not "extended" to defendants upon privatization, 47 U.S.C. § 763(3) (listing "general criteria to ensure a pro-competitive privatization of INTELSAT"), but defendants, as successor companies, inherited the "correlative benefit of any immunity from suit or liability" held by INTELSAT. <u>Kubiszyn v. Terex Div. of Terex Corp.</u>, 628 N.Y.S.2d 994, 997 (N.Y. App. Div. 1995), <u>leave to appeal denied</u>, 659 N.E.2d 771 (N.Y. 1995). Thus, if INTELSAT was not bound by commitments that it made, neither are these defendants.

**Fraud claims**

Under Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." This means that "'the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'" <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (citation omitted). Except for a limited number of post-privatization offers allegedly made in October 2001, plaintiffs have identified no allegedly fraudulent statements made by these

defendants.  The proposed second amended complaint in <u>Acosta</u> does suggest that statements made by INTELSAT are somehow attributable to the post-privatization defendants, but no specifics are provided, and Rule 9(b) requires more.  Further, plaintiffs do not specify what was "retained or given up."[2]  Plaintiffs' pleadings might generally meet the liberal Rule 8 general pleading standard, but their fraud claims do not meet that of Rule 9(b).  <u>See</u> <u>Kowal</u>, 16 F.3d at 1278.  Plaintiffs' allegation of a "fraudulent conveyance," <u>Acosta</u> Pls.' Proposed Second Am. Compl. at ¶ 65, is equally lacking in specificity.

Plaintiffs' fraud claims must be dismissed, except for the claims of plaintiffs who accepted the October 2001 early retirement offer, since it is clearly alleged that those plaintiffs accepted a retirement offer from defendants based on fraudulent promises.  These plaintiffs gave up their jobs at least in part in exchange for the alleged promise of continuing medical care.  They could presumably have turned down these offers and kept working (at least for some period of time).

**<u>ERISA claims</u>**

Plaintiffs assert that defendants are bound by a vested ERISA employee benefit plan guaranteeing their medical benefits.

---

[2] Plaintiffs proffer that they gave up their right to complain to Congress or the FCC to protect their benefits before privatization, <u>see, e.g.</u>, 5/11/05 Tr. at 41, will not do, because the only statements they clearly attribute to defendants were made post-privatization.

Although defendants correctly argue that no formal ERISA plan was created, controlling precedent acknowledges that plans can be created informally.  Kenney v. Roland Parson Contracting Corp., 28 F.3d 1254 (D.C. Cir. 1994).  Whether such a plan exists here requires a fact-sensitive inquiry, see id., that cannot be resolved without discovery, especially given the outstanding question of immunity.  The Second Circuit has found that if an ERISA plan is created without formal plan documents, vesting may also be achieved in the same manner, Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 77-78 (2nd Cir. 1996), cert. denied, 519 U.S. 1008 (1996), so discovery is appropriate as to vesting as well.

**Limited discovery will be permitted**

Plaintiffs cite to a number of broken promises that appear to have been made by INTELSAT, not by defendants, but they assert (without substantiating details) that these promises were made "on behalf of" both INTELSAT and defendants.  E.g., Acosta Pls.' Proposed Second Am. Compl. at ¶ 35.  It appears that there may have been substantial overlap of management between INTELSAT and defendants.  E.g., 5/11/05 Tr. at 11.[3]  Plaintiffs will be permitted limited discovery to explore their theory that INTELSAT's successors somehow adopted or ratified the

---

[3] The Director General and CEO of INTELSAT (who made some of the allegedly fraudulent statements to plaintiffs) became CEO of IGSC upon privatization.

undertakings of their predecessor. How to "limit" such discovery will be left to the parties in the first instance. Plaintiffs' motions for leave to file discovery [Acosta: 37; Morales: 27] are **denied without prejudice**. If the parties are unable to agree on a discovery program consistent with this Memorandum, a motion for summary judgment and a Rule 56(f) affidavit should point the way to the discovery that needs to be taken. For plaintiffs' contract claims, certainly, plaintiffs must have access, under an appropriate protective order, to the Restructuring and Transfer Agreements that effectuated INTELSAT's privatization.

## Conclusion

For the reasons stated above, defendants' motions to dismiss [Acosta: 8, 29; Morales: 4, 22] are **denied** except with regard to plaintiffs' fraud allegations not involving those plaintiffs accepting early retirement in October 2001. Plaintiffs' motions to consolidate [Acosta: 21, 33] are **granted** as specified in more detail above. Plaintiffs' motion for leave to file a second amended complaint [26] is **granted**. Plaintiffs' motions to certify as a class action [Acosta: 21; Morales: 6] are **denied without prejudice**. Plaintiffs' motions for leave to file discovery [Acosta: 37; Morales: 27] are **denied without prejudice**. **IT IS SO ORDERED**.

JAMES ROBERTSON
United States District Judge