IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Phillip S. Morales, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: 1:04-CV-01044 |
| | | JUDGE: James Robertson |
| Intelsat Global Service Corp., et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AGREEMENT OF SETTLEMENT OF
## CONSOLIDATED ERISA CLASS ACTION

Pursuant to Rule 23(e), Fed. R. Civ. P., and subject to the Court's approval, certain named plaintiffs and defendants enter into this Settlement Agreement ("Agreement") to resolve fully and finally the consolidated class action pending in the United States District Court for the District of Columbia that was originally filed under the captions of Morales et al. v. Intelsat Global Service Corp., et al., Civil Action No. 1:04-CV-01044, and Acosta et al. v. Intelsat Global Service Corp., et al., Civil Action No. 1:04-CV-01618, and, by Order dated August 19, 2006, was consolidated under the Morales caption ("the Consolidated Action").

WHEREAS, the named plaintiffs have now filed a consolidated class action complaint, styled as the Fifth Amended and Consolidated Complaint, which is the operative pleading, by which they assert, on behalf of themselves and the Class defined in Paragraph 1.3 below, claims arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as well as certain common law claims, and they seek injunctive and other relief, including attorneys' fees, expenses and costs.

WHEREAS, defendants deny and continue to deny each of the claims asserted by plaintiffs, to deny that plaintiffs have stated a claim upon which relief can be granted, and to deny that plaintiffs are entitled to any relief.

WHEREAS, plaintiffs and defendants have agreed to settle and compromise the Consolidated Action on the terms and provisions as set forth in this Agreement, subject to the approval of the Court, based on an evaluation of (1) the substantial benefits that

plaintiffs and potentially their family members will receive as a result of the settlement, and the certainty the settlement provides to them; (2) the risks of litigation; and (3) the time and expense of litigation.

WHEREAS, extensive and protracted arm's-length settlement negotiations have been conducted between plaintiffs and defendants.

NOW, THEREFORE, it is hereby agreed by and between plaintiffs and defendants that the Consolidated Action and all claims by and on behalf of the Class members be settled, compromised and dismissed with prejudice, on the following terms and conditions:

## I.   Definitions

The following terms, as used in this Agreement, have the following meanings for purposes of this Agreement:

1.1.   "Agreement" means this Agreement of Settlement of Consolidated ERISA Class Action.

1.2.   "INTELSAT/IGO" means the International Telecommunications Satellite Organization, an international organization established by its member governments and now known as ITSO.

1.3.   "Class" means the Qualifying Retiree Group, as defined in Section 1.13 below. Plaintiffs and defendants agree that the Class shall be certified pursuant to Fed. R. Civ. P. 23(b)(2), and they will jointly request that the Court so certify the Class.

1.3.1.   The list attached hereto as **Exhibit F** is believed to identify all of the members of the Class and will be used for purposes of giving notice to the Class; however, the definition of the Class by reference to the Qualifying Retiree Group, as that term is defined in Section 1.13 below, shall be the governing definition of the Class and shall control over the list attached as **Exhibit F**. Thus, by way of illustration, if a person is not listed on **Exhibit F** but is included within the Qualifying Retiree Group, as defined in Section 1.13 below, that person shall be a member of the Class and bound by this Agreement.

1.4.   "Effective Date" means the date on which all of the terms of this Agreement shall take full force and effect, which shall be the date of Final Court Approval.

1.5.   "Final Court Approval" means that the Court has finally approved the settlement of the Consolidated Action pursuant to the terms of this Agreement and has entered the proposed Consent Decree and Final Judgment substantially in the form attached hereto as **Exhibit E**; that such Consent Decree and Final Judgment is finally

affirmed on appeal or is no longer subject to appeal; and that the time for any petition for reargument, appeal or review, by *certiorari* or otherwise, has expired.

1.6. "IGO Board Resolutions" means, separately and collectively, the March 2001 Resolution, CPD-114, and the April 2001 Resolution, CPD-119, adopted by the Board of Governors of INTELSAT/IGO. The "March Resolution" means Resolution No. CPD-114, and the "April Resolution" means Resolution No. CPD-119.

1.7. "Intelsat" means Intelsat Corporation, a Delaware corporation.

1.8. "Intelsat Obligors" means (a) Intelsat Holdings, Ltd., Intelsat, Ltd., Intelsat (Bermuda), Ltd., Intelsat Intermediate Holding Company Ltd., Intelsat Subsidiary Holding Company, Ltd., Intelsat Global Service Corporation, Intelsat Holdings LLC, Intelsat LLC, Intelsat Global Sales & Marketing Ltd., Intelsat UK Financial Services Ltd., Intelsat USA Sales Corp., Intelsat USA License Corp, Intelsat Holding Corporation (formerly known as PanAmSat Holding Corporation), Intelsat Corporation (formerly known as PanAmSat Corporation), and the direct and indirect subsidiaries of Intelsat Corporation who are party as guarantors to that certain Credit Agreement of Intelsat Corporation, as amended and restated as of 3 July 2006 and who are identified on **Exhibit G** attached hereto (collectively, the "Intelsat Group"); (b) any corporation or other entity formed by a member of the Intelsat Group to which all or substantially all of the assets of the Intelsat Group are transferred; (c) any transferee of all or substantially all of Intelsat Group's assets on a consolidated basis; and (d) any person or group (within the meaning of Section 13(d)(3) or Section 14(d)(2) of the Securities Exchange Act of 1934, as amended, or any successor provision thereto) that BOTH (i) holds more than twenty percent (20%) of the then-issued and outstanding equity interests of any member of the Intelsat Group AND (ii) is the recipient, directly or indirectly, of a transfer of assets from the Intelsat Group (other than cash or a dividend consisting of an equity or other ownership interest of any member of the Intelsat Group) for less than fair market value.

1.9. "Lead Plaintiffs" means Simon Bennett, David Connick, Debra Cooper, David Koff and Patricia S. Magarinos-Acosta.

1.10. "Lead Counsel for Plaintiffs" means Lawrence P. Postol, Esquire of the law firm of Seyfarth Shaw LLP.

1.11. "Plan" means the "Intelsat Qualifying Retiree Group Health Plan", as established by Intelsat as of the Effective Date. A copy of the Plan is attached hereto as **Exhibit A.**

1.12. "Prior Retiree Health Plan" means the retiree health benefits program sponsored by Intelsat that is in effect up to the Effective Date, which provides medical, dental, vision and prescription drug benefits to the Qualifying Retiree Group, excluding surviving spouses and dependents of retirees who died after January 1, 2002.

1.13. "Qualifying Retiree Group" means the following persons: (a) all individuals formerly employed by INTELSAT/IGO or Intelsat, who are described by the

IGO Board Resolutions, who are retired as of 1 January 2007, and who are enrolled in the Prior Retiree Health Plan as of 1 January 2007 (the "IGO Board Resolution Retirees"); (b) all current or surviving spouses, domestic partners, or dependents of the IGO Board Resolution Retirees who are enrolled in the Prior Retiree Health Plan as of 1 January 2007 and who remain eligible for coverage under the Plan from and after the Effective Date (the "IGO Board Resolution Dependents"); (c) all surviving spouses, domestic partners or dependents of retirees described by the IGO Board Resolutions who died prior to 1 January 2007, but which surviving spouses, domestic partners or dependents were enrolled in the Prior Retiree Health Plan immediately before the death of such retiree, who are not enrolled in the Prior Retiree Health Plan as of 1 January 2007 but who, by virtue of this Agreement, become eligible for, and enroll in the Plan as of the Effective Date and thereafter remain eligible for coverage under the Plan; (d) all current employees of Intelsat who are described in the IGO Board Resolutions but who have not retired as of 1 January 2007 and who are eligible under the terms of the IGO Board Resolutions to enroll in the Plan upon their actual retirement from Intelsat after age 55, but only in the event that they timely take all steps necessary to actually enroll in the Plan as a retiree, upon their actual retirement from Intelsat, which retirement occurs after 1 January 2007 ("IGO Board Resolution Eligible Members"); and (e) all spouses, domestic partners, or dependents of IGO Board Resolution Eligible Members who enroll in the Plan as of the date that the IGO Board Resolution Eligible Member actually retires from Intelsat and enrolls in the Plan himself/herself, and who thereafter remain eligible for coverage under the Plan ("IGO Board Resolution Eligible Dependents"). For purposes of this definition of "Qualifying Retiree Group," the terms "spouse", "domestic partner" and "dependent" shall be as defined under the terms of the Plan.

## II.     Terms of Settlement

The terms of the settlement are set forth herein and will be further documented in documents described herein.

2.1.    New Plan. As of the Effective Date, Intelsat will sponsor and adopt the Plan, which will provide medical, dental, prescription drug and vision benefits for the Qualifying Retiree Group and which will be subject to ERISA. A copy of the Plan is attached hereto as **Exhibit A,** and it is incorporated by reference into this Settlement Agreement.

2.2.    Termination of Prior Retiree Health Plan. Upon Intelsat's adoption of the Plan as of the Effective Date, the Prior Retiree Health Plan will have no force or effect with respect to any benefits or services provided from and after the Effective Date; provided, however, that any routine claims for benefits submitted to UnitedHealthcare or MetLife based on medical benefits or services rendered by medical providers or dentists before the Effective Date shall be processed and paid in accordance with the terms of the Prior Retiree Health Plan.

2.3.    Reimbursement of Out-of-Pocket Medical Expenses for Certain Surviving Spouses, Dependents or Domestic Partners. If any retiree who was covered by the IGO

Board Resolutions has died between January 1, 2002 and the Effective Date, and any surviving spouse, dependent or domestic partner of said retiree has incurred out-of-pocket medical expenses that otherwise would have been covered by the Prior Retiree Health Plan, or has paid premiums in excess of the premiums they would have paid under the Prior Retiree Health Plan, Intelsat will reimburse such surviving spouse, dependent or domestic partner the excess costs and excess premium payments upon receipt of satisfactory documentation evidencing payment of such excess costs and premiums.

2.4.    No Other Obligations Imposed on Intelsat. Intelsat shall have no other obligations for or regarding the members of the Qualifying Retiree Group other than those set forth herein. Intelsat is not obligated to post a letter of credit, fund a trust, or otherwise provide any other security with respect to its obligation to provide medical benefits to the Qualifying Retiree Group.

### III.    Procedure for Approval of Settlement

3.1.    Presentation to the Court. Within 10 business days of execution of this Agreement by the parties, the parties will present to the Court a Joint Motion to Certify Class for Settlement Purposes Only, Preliminarily Approve the Agreement of Settlement of Consolidated ERISA Class Action, and to Approve the Form and Manner of Notice (attached hereto as **Exhibit B**); a proposed Notice of Proposed Settlement of Class Action Lawsuit (attached hereto as **Exhibit C**); a proposed Order Certifying Class for Settlement Purposes Only, Preliminarily Approving the Agreement of Settlement of Consolidated ERISA Class Action, and Approving the Form and Manner of Notice, which certifies a class for purposes of settlement only, approves the form and manner of notice, and schedules a hearing on fairness of the proposed settlement pursuant to Rule 23(e) (attached hereto as **Exhibit D**); and a proposed Consent Decree and Final Judgment (attached hereto as **Exhibit E**). Any party may file a brief pertaining to the Joint Motion within ten days of the filing of the Motion.

3.2.    Identification of Class Members. Promptly upon execution of the Agreement, Intelsat will provide to plaintiffs' counsel a list of the names and last-known postal addresses of the known members of the Class. Subject to the Court's approval, and as a condition of Intelsat's being bound by this Agreement, individuals will not have a right to "opt-out" from the Agreement and either continue litigating against Intelsat or institute related litigation against Intelsat.

3.3.    Notice to be Sent. A copy of the Notice of Proposed Settlement of Class Action Lawsuit, approved by the Court, will be sent to each member of the Class by first-class mail at his or her last-known address. The list of known members of the Class to whom the Notice will be sent is attached hereto as **Exhibit F**. Intelsat will bear the costs of preparing and mailing such Notice.

3.4.    Hearing to be Scheduled. Pursuant to Rule 23(e)(1)(C), the Court shall hold a hearing to determine whether the Agreement is fair, reasonable and adequate. This hearing shall be scheduled for a date no fewer than 60 days after the date on which the mailing of the Notice of Class Action Settlement to Class members, pursuant to

Paragraph 3.3 of this Agreement, is expected to be completed. This Hearing will also consider the amount of attorneys' fees which should be awarded, consistent with Section 3.6 of this Agreement, and whether the Court should enter the Consent Order and Final Judgment, a draft of which is attached hereto as **Exhibit E**.

3.5. <u>Final Judgment and Consent Decree.</u> The parties will request the Court to enter the final judgment as a consent decree, substantially in the form attached hereto as **Exhibit E**. The consent decree will have attached to it the documents for the Plan. This settlement is not final and is contingent upon the Final Court Approval.

3.6. <u>Attorneys' Fees</u>. Upon Final Court Approval, Intelsat shall pay to Lead Counsel for Plaintiffs reasonable attorneys' fees, in an amount to be awarded by the Court, but not to exceed $200,000.

3.7. <u>Release of Claims</u>. Upon Final Court Approval, all claims of all members of the Class shall be deemed to have been fully, finally and forever released, remised and discharged, and said persons shall be forever barred from prosecuting any and all claims, demands, damages, rights, liabilities and/or causes of action, in law or in equity, in any court in the United States or anywhere else in the world, whether known or unknown, matured or unmatured, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, arising under state or federal law or any other source of law, by or on behalf of the plaintiffs, their surviving spouses, dependents and domestic partners, any Class member, or other successors or assigns against INTELSAT/IGO, Intelsat or any member of the Intelsat Obligors as defined above, any group health or dental plan sponsored by Intelsat that provided benefits to the Qualifying Retiree Group prior to the Effective Date, or their Plan fiduciaries, arising out of or relating to the IGO Board Resolutions or the claims asserted or that could have been asserted in the Consolidated Action referenced above; provided, however, that excluded from this release are any routine claims for benefits submitted to UnitedHealthcare or MetLife based on medical benefits or services rendered by medical providers or dentists before the Effective Date, which shall be processed and paid in accordance with the terms of the Prior Retiree Health Plan.

3.8. <u>Joint and Several Liability for Performance of Intelsat Obligations under the Agreement.</u> Each of the Intelsat Obligors shall have joint and several liability for the obligations of Intelsat under this Agreement; such joint and several liability shall apply whether the asset transfers described in subparagraphs (b), (c) or (d) of Paragraph 1.8 of this Agreement occur in a single transaction or related series of transactions (each such transaction or related series of transactions being hereinafter referred to as an "Asset Transfer"). The Intelsat Group will implement and execute all necessary documentation in applicable transactions and corporate documents so as to ensure the enforceability of this provision. If a subsidiary is sold, then the subsidiary shall no longer be liable for the benefits, unless its sale is part of an Asset Transfer.

3.9. <u>Extinguishment of IGO Board Resolutions.</u> Upon Final Court Approval, this Agreement shall supersede and extinguish (a) any and all obligations of INTELSAT/IGO or Intelsat arising out of or as a result of one or both of the IGO Board Resolutions, and (b) any and all rights of any person covered by the IGO Board

Resolutions arising out of, or as a result of, such IGO Board Resolutions. Upon Final Court Approval, the IGO Board Resolutions shall have no further force or effect as to any person covered by either IGO Board Resolution.

      3.10. Cooperation of Lead Plaintiffs, Defendants and Their Counsel. Lead Plaintiffs, defendants and their counsel agree to cooperate with one another to request Court approval of this Agreement, and to use their reasonable best efforts to effect and consummate the terms of this Agreement and the settlement.

      3.11. Preservation of Information. Within sixty (60) days of the Effective Date, Defendant shall obtain from UnitedHealthcare information (whether in electronic format or otherwise) containing the names of all "in network" providers and the prescription drugs that are covered under the component benefit programs of the Plan administered by UnitedHealthcare, as of the Effective Date. Defendant shall have the obligation to preserve such information and to make such information available, if the use of the Neutral Expert is invoked pursuant to Section 7 of the Plan.

**IV.**    **General Provisions**

      4.1. Entire Agreement. This Agreement, together with the attached exhibits hereto, constitutes the entire agreement of the parties and may not be modified or amended except by a writing signed by all parties.

      4.2. Captions. The captions to this Agreement appear for the purpose of convenience only and have no legal effect.

      4.3. Supervision of the Court. Administration and consummation of the terms of this Agreement shall take place under the supervision and authority of the Court, pursuant to the Consent Decree and Final Judgment, and all parties hereto expressly consent to the jurisdiction of the Court for such purposes.

      4.4. Execution of Counterparts. The parties to this Agreement may execute this Agreement in any number of counterparts and on separate counterparts, each of which shall constitute an original, but all counterparts together shall constitute one and the same document. Facsimile signatures shall be deemed originals.

      4.5. Choice of Law. This Agreement and all documents necessary to effect this Agreement shall be governed by and construed in accordance with ERISA. Where reference is needed to state law, the laws of the District of Columbia shall apply, to the extent not otherwise pre-empted by ERISA.

      4.6. Construction of Terms. Should any provision of this Agreement require judicial interpretation, the parties agree that the Court or other adjudicating body shall not apply a presumption that the terms be more strictly construed against the party who prepared same, it being agreed that all parties collectively participated in the negotiation and preparation of this Agreement.

4.7.   <u>Notices.</u>   Notices required by this Agreement may be submitted by any form of written communication, including e-mail, overnight mail, regular mail or fax:

as to the plaintiffs and the Class to:

| | |
|---|---|
| Simon Bennett<br>6351 Brampton Court<br>Alexandria, Virginia  22304 | David Connick<br>1320 21st Street, NW<br>Apartment 102<br>Washington, DC  20036 |
| Debra Cooper<br>12423 Melody Turn<br>Bowie, MD  20715 | David Koff<br>3005 S. Leisure World Blvd.<br>Unit 708<br>Silver Spring, MD  20906 |
| Patricia S. Magarinos-Acosta<br>8555 West Russell Road<br>Unit 2015<br>Las Vegas, NV  89113-1812 | |

with a copy (which shall not be considered good notice) to counsel to the plaintiffs:

Lawrence P. Postol
Seyfarth Shaw LLP
815 Connecticut Avenue, NW
Washington, DC  20006
lpostol@seyfarth.com

as to Intelsat:

Intelsat Corporation
3400 International Drive, NW
Washington, DC  20008
Attention:  Philip S. Spector, Executive Vice President and General Counsel
Phil.spector@intelsat.com

with a copy (which shall not be considered good notice) to counsel to Intelsat:

G. Stewart Webb, Jr.
Venable LLP
2 Hopkins Plaza
Suite 1800
Baltimore, MD 21201
gswebb@venable.com

4.8. <u>Agreement Binding on Successors and Assigns.</u> This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives have agreed to this Agreement, which shall become effective upon Final Court Approval.

_____
G. Stewart Webb, Jr. (D.C. Bar #: 488588)
Andrew Gendron (D.C. Bar #: 471159)
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201-2978
(410) 244-7400

Andrea I. O'Brien (D.C. Bar #: 399279)
VENABLE LLP
One Church Street, Fifth Floor
P.O. Box 1527
Rockville, Maryland 20849-1527
(301) 217-5600

Attorneys for Defendants and for the Intelsat Group (as defined in Section 1.8(a) above)

_____  3/13/07
Lawrence P. Postol
Seyfarth Shaw LLP
815 Connecticut Avenue, NW
Washington, DC 20006
(202) 828-5385

Attorneys for Proposed Lead Plaintiffs and Class